The Town of Kirkwood, Appellant, v. David Newbury et al., Respondents.

Originally and as one of the attributes of state sovereignty, the power to lay out highways and to build bridges connecting them over streams, for the use of the public, and to levy taxes for that purpose, belonged to the state legislature, and, in the exercise of its own discretion, it could delegate the exercise of such power to boards of supervisors, the subordinate local legislatures of the several counties of the state.

While, by the State Constitution (§ 18, art. 3), the legislature is prohibited from passing any private or local law for the building of a bridge, it may (§ 23, art. 3) confer the power of such local legislation upon boards of supervisors.

Under the act of 1875 (Chap. 482, Laws of 1875), conferring "on boards of supervisors further powers of local legislation," as amended by the act of 1885 (Chap. 451, Laws of 1885), the board of supervisors of a county

having within it two towns separated by a stream, may, upon the proper application of one of such towns, enact a law authorizing and compelling the erection of a bridge over said stream to connect highways in said towns, and impose a tax upon said towns to pay the expenses thereof, although the officers of one of the towns and a majority of its tax-payers are opposed and have expressed their dissent by vote at a regular town meeting.

Reported below, 45 Hun, 323.

(Argued October 20, 1890; decided December 9, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 1, 1887, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The appeal is based upon the judgment-roll alone, and brings up questions of law only.

The facts found upon the trial are briefly these : The towns of Kirkwood and Conklin are adjoining towns in the county of Broome, and are separated by the Susquehanna river. March 19, 1886, the board of supervisors of the county of Broome passed a bill (No. 39) authorizing the construction of an iron bridge across the Susquehanna river between said towns, the issuing of bonds to raise the money with which to pay for the same and appointing the defendants commissioners of the town of Kirkwood, who were to co-operate with the commissioners appointed for that purpose by the town of Conklin. This bill was passed on the application of the town of Conklin alone, regularly made at a special town meeting for that purpose. The town of Kirkwood had previously voted, at a regular town meeting by a majority vote, not to join in or to apply for the building of said bridge, and opposed the same. Previous to said application by the town of Conklin, there was no highway in the town of Kirkwood leading to the proposed site of the bridge, and the board of supervisors, by proper proceeding, authorized the laying out of a highway in the town of Kirkwood to connect with that already laid out in the town of Conklin. No application for the bridge had ever been made to the town officers or voters of Kirkwood, and no

bridge had previously existed at the site upon which this bridge was proposed to be built.

On May 19, 1886, and a few days after the commencement of this action, the legislature, by chapter 419 of the laws of that year, legalized, ratified and confirmed the action and proceedings taken in this matter by said board of supervisors.

The complaint only seeks to restrain the issuing of the bonds upon the town of Kirkwood for its proportion of the expense for the bridge.

An injunction was granted at the outset of the action, but was vacated before the action was tried, and the order vacating it was not appealed from.

*Alex. & A. W. Cumming* for appellant. The board of supervisors, under a conditional right to authorize, had no power to compel the town of Kirkwood to build the bridge. (Laws of 1875, chap. 482, § 1; Const. of N. Y. art. 3, §§ 18, 23; Laws of 1882, § 60; Laws of 1885, chap. 451; R. S. § 1392; Laws of 1857, chap. 639; Laws of 1883, chap. 346; Laws of 1875, chap. 482, § 6.) Neither the Legislature nor the board of supervisors had any power to authorize the defendants to build this bridge, or provide money therefor, and charge the same to the town. (*People ex rel.* v. *Aldermen*, 55 N. Y. 50; *People ex rel.* v. *McKinney*, 52 id. 374.) The complaint alleges a good cause of action. (*Town of Willsborough* v. *N. Y. & C. R. R. Co.*, 72 N. Y. 182; *Town of Essex* v. *Rogers*, 76 id. 599; *Town of Wayne* v. *Sherwood*, Id. 199; *Town of Springport* v. *Savings Bank*, 75 id. 393; 84 id. 403; *Town of Vance* v. *Woodruff*, 62 id. 462; *Town of Duanesburgh* v. *Jenkins*, 46 Barb. 294; 57 N. Y. 177; *Hardenburg* v. *Van Keuren*, 16 Hun, 23; 3 Pom. Eq. Juris. 367, § 1338.) Defendants are not aided by the legalizing act of 1886. (Const. art. 17, § 3; *Hardenberg* v. *Van Keuren*, 16 Hun, 14; *Gregg* v. *Town of Andes*, 93 N. Y. 417, 418; *People* v. *Mitchell*, 35 id. 551; *Town of Duanesburg* v. *Jenkins*, 57 id. 177; 16 Hun, 17–22; *McGuiar* v. *Henry*, 84 Ky. 1.)

*A. B. Wales* for respondents. The board of supervisors had the power to provide for building the bridge in question, upon the application of one town alone. (State Const. art. 3, §§ 18, 23; *People* v. *Mayor, etc.*, 4 N. Y. 419; *Town of Duanesburg* v. *Jenkins*, 57 id. 178; *People* v. *Mitchell*, 35 id. 551; *In re Van Antwerp*, 56 id. 261; *Genet* v. *City of Brooklyn*, 99 id. 296; *Spencer* v. *Merchant*, 100 id. 585; Laws of 1875, chap. 482, §§ 1, 3, 4; Id. chap. 275; Laws of 1876, chap. 257; Laws of 1885, chap. 451; *People* v. *March*, 14 Abb. [N. S.] 429; *People* v. *Banks*, 67 N. Y. 568; *People* v. *Flagg*, 46 id. 401; *People* v. *McDonald*, 69 id. 362; *B. I. B. Co.* v. *Wagner*, 32 N. Y. S. R. 407; Laws of 1838, chap. 314, § 1; Laws of 1880, chap. 175; *Hudson* v. *Mayor, etc.*, 9 N. Y. 163; *Mayor, etc.*, v. *Furze*, 3 Hill, 612; *Wilson* v. *Mayor, etc.*, 1 Den. 595; *People* v. *Suprs.*, 51 N. Y. 401; *People ex rel.* v. *Common Council of Brooklyn*, 22 Barb. 401; *People* v. *Bd. of Suprs.*, 36 How. Pr. 1; *Phelps* v. *Hawley*, 52 N. Y. 23; *People* v. *Batcheller*, 53 id. 128; 5 Abb. N. Dig. 599, § 121; *In re Lauterjung*, 48 J. & S. 308; *Hagadorn* v. *Raux*, 72 N. Y. 583; *Donaldson* v. *Wood*, 22 Wend. 395; Dwarris on Stat. 562; *Pillow* v. *Bushnell*, 5 Barb. 136.) That there was no highway at the location of the proposed bridge when the town meeting voted does not affect the act. (*People* v. *Flagg*, 46 N. Y. 401; *People* v. *Meach*, 14 Abb. [N. S.] 429; *People* v. *Batcheller*, 53 N. Y. 128; *People* v. *Banks*, 67 id. 574, 575.) Section 13, article 2, chapter 2, part 1 of the Revised Statutes, provides " that town meetings shall be kept open in the day-time only, between the rising and the setting of the sun, and does not require the meeting to be kept open from sunrise to sunset." (*People* v. *Martin*, 5 N. Y. 22; Laws of 1874, chap. 173; 1 R. S. 815.) That bill No. 39 was passed upon the same application or resolution as bill No. 35, does not affect the validity of bill No. 39. (Laws of 1875, chap. 482, § 2; 2 R. S. 949.) If any irregularity affecting the validity of bill No. 39 had existed, such irregularity would have been cured by chapter 419 of the Laws of 1886. (*Tifft* v. *City of Buffalo*, 82 N. Y. 204; *Williams* v. *Town of Duanesburg*,

66 id. 129 ; *Thompson* v. *Perrine*, 13 Otto, 815 ; *Rogers* v. *Stephens*, 86 N. Y. 623 ; *Spencer* v. *Merchant*, 100 id. 585 ; *W. I. B. Co.* v. *Town of Attica*, 49 Hun, 513 ; *People ex rel. Kilmer* v. *McDonald*, 69 N. Y. 362.) The bonds in question have been issued and sold since the trial, and an injunction restraining their issue and sale will not be granted, as it would be ineffectual. (*People* v. *Clark*, 70 N. Y. 518.) Whether the action of the board of supervisors, as expressed by supervisors' bill No. 39, was legal and valid or not, the judgment must be sustained, as the plaintiff's complaint does not state a cause of action. (Laws of 1875, chap. 482, § 4 ; 2 R. S. 949, § 4 ; *Town of Mentz* v. *Cook*, 22 Wkly. Dig. 476 ; 98 N. Y. 222, 229 ; *Town of Venice* v. *Woodruff*, 62 id. 462 ; *Town of Springport* v. *T. S. Bank*, 74 id. 397 ; *Town of Lyons* v. *Chamberlain*, 89 id. 578 ; *Cagwin* v. *Town of Hancock*, 84 id. 532 ; *Town of Wellsburg* v. *N. Y. & C. R. R. Co.*, 76 id. 182; *Town of Essex* v. *Rogers*, Id. 599 ; *Town of Wayne* v. *Sherwood*, Id. 599 ; *Town of Springport* v. *Teutonia*, 84 id. 403 ; *Town of Duanesburg* v. *Jenkins*, 46 Barb. 294 ; 57 N. Y. 177; Laws of 1872, chap. 161 ; Code Civ. Pro. § 1925 ; *Ayres* v. *Lawrence*, 59 N. Y. 192 ; *Kilbourne* v. *St. John*, 89 id. 22.)

POTTER, J.   The main question in this case is whether the board of supervisors, under the existing law of this state, may, upon application of one of two towns in the same county separated by a stream, and against the wishes of a majority of the voters as expressed in town meeting and without the consent of its officers authorized to give consent, direct the building of a highway bridge across such streams and levy a tax upon tax-payers of the latter town to defray in part the expenses of building such bridge. The court below held that the board of supervisors of a county so situated had such power.

The question is one of sufficient general interest and importance, to receive the sanction or dissent of this court, notwithstanding the bridge has been completed and paid for by the

levying and applying the taxes raised for that purpose in part from the town objecting to the project, while this action brought to test that question has been pending.

We think the judgment of the court below in this case should be affirmed, and in view of the able and elaborate review and construction of the various statutes involved in this case when it was before the trial court, it will not be necessary or advisable to extend the discussion to any considerable length.

I cannot think it necessary to cite authorities in support of the proposition that, originally and as one of the attributes of sovereignty, the power to lay out highways and to build bridges connecting them over streams for the use of the public and to levy taxes for that purpose, inheres in the law-making power of the state.

The law-making power may, in the exercise of its own discretion, or under the direction of a written constitution, delegate the exercise of such power to the board of supervisors, the subordinate local legislature of the several counties of the state.

The Constitution of this state (§ 18 of art. 3), not because the power to make all laws does not belong to the legislature, but, doubtless, to save the time of the general legislature and to place certain powers of legislation nearer the people for whose benefit they are to be exercised, restrains the general legislature from passing any private or local bill for the building of a bridge, and section 23 of the article provides: "The legislature shall, by general laws, confer upon boards of supervisors of the several counties of the state such further powers of local legislation and administration as the legislature may from time to time deem expedient."

The legislature has accordingly conferred upon the boards of supervisors the power of laying out highways and the building of bridges, and prescribed the conditions upon which the boards of supervisors may exercise such power.

The acts which have been passed by the legislature from time to time prescribe the changes which it has deemed it advisable to make upon this subject.

The act, chapter 451 of the Laws of 1885, passed by the legislature of the state June ninth, amending chapter 482 of the Laws of 1875, prescribes the conditions upon which boards of supervisors may exercise the power of building bridges, and the findings of the trial court in this case show that the conditions prescribed by the above-cited chapter 451 of the Laws of 1885 existed when the board of supervisors of Broome county assumed to authorize the building of the bridge in question, and provided the means therefor by the levying of the taxes upon the towns of Conklin and Kirkwood.

We think by the change of the laws effected by chapter 451 of the Laws of 1855, the board of supervisors of a county having within it two towns separated by a stream may, upon the proper application of *one* of such towns, enact a law authorizing and compelling the erection of a bridge over said stream to connect highways in said towns, and impose a tax upon said towns to pay the expense thereof, though a majority of the tax-payers of one of such towns and its officers are opposed to it, however such opposition may be indicated. (*People ex rel. Otsego Co. Bk.* v. *Board of Suprs.*, 51 N. Y. 401; *People ex rel. McLean* v. *Flagg*, 46 id. 401; *People ex rel. Kilman* v. *McDonald*, 69 id. 32.)

In order to warrant the conclusion of a court that the legislature intended to change a statute where there is but slight change in the phraseology of the later statute, it is not always necessary to find a reason for the change, but it seems to me that it would not be difficult to suggest a reason for a change of the former statute by the statute under consideration.

If the former statute had not been changed, as we think it has been, a bare majority of the tax-payers of a town could bar the way, perhaps the most convenient and necessary for the rest of the inhabitants of that town, and of the entire public outside of that town, into or through such town at the most accessible point.

Having reached the conclusion that the decision of the court below, upon the ground upon which it is placed, should be affirmed, I have not deemed it worth while to discuss the

other points presented by counsel for the respondent in relation to the effect of the act of the legislature legalizing the acts and proceedings of the board of supervisors involved in this action, passed before the action was commenced; or that this action sought no other relief than to restrain the issuing of bonds by the respondents, and that the bonds have been issued and paid before the argument of this appeal, or whether this action is maintainable by the town, or whether the undisputed facts in this case constitute a cause of action upon the equity side of the court to restrain the issuing of bonds where there is want of a defense at law.

I think the judgment should be affirmed, with costs.

All concur except FOLLETT, Ch. J., not sitting.

Judgment affirmed.