## AMOS WILT v. JULIA R. CUTLER.

*Deeds—Description—Public records in evidence.*

A deed dated in 1840 described land as situated in the county of Lenawee and *territory* of Michigan, and assigned part of it to township seven south, range seven east. There was such a township and range in Monroe county, but not in Lenawee, and at the date of the deed Michigan was no longer a territory. In construing the deed the general description by the name of the county was rejected, and it was held good for lands in the township and range specified.

Where a deed covers land in different counties, it is properly recorded in any one of them, and a certified transcript of the record of a deed properly recorded in one county is admissible as evidence in any other as to any of the lands described in it that lie within the State. Comp. L., § 4233.

The record of a deed need not be signed by the register to make it admissible in evidence.

A Michigan statute (Comp. L., § 5935) requires that a volume of State laws must have been published by the authority of the State government to make it admissible as evidence of the laws it contains. *Held* that a volume purporting on the title page to have been "printed by order of the Governor" was admissible under the statute, the purpose of which was merely to exclude unauthorized publications.

The record of a will with the proof of it and the letters issued thereon constitute the probate of it in New Jersey and entitle a New Jersey will to be filed for probate in Michigan.

A transcript of the record showing the probate of a will in New Jersey was held to be properly authenticated where its correctness was certified to by the surrogate under the seal of his court, and the president judge of the orphans' court had certified under the seal of that court that the authentication was in due form and by the proper officer.

Error to Lenawee. Submitted October 23, 1877. Decided January 22, 1878.

EJECTMENT. The facts are in the opinion.

*A. L. Millard* for plaintiff in error. Where no part of the lands conveyed lie in the county in which the

deed is recorded, the record is a nullity (*Horsley v. Garth*, 2 Gratt., 471), and where part of the lands lie in the county, the record cannot be primary evidence as to the rest, *Jackson v. Rice*, 3 Wend., 180; *Brown v. Edson*, 23 Vt., 449.

*Howell & Watts* for defendant in error. A deed of land lying in two counties but recorded in only one, is evidence as to the land in the other county, *M'Keen v. Delancy*, 5 Cr., 22; *Livingston v. M'Donald*, 9 Ohio, 168. A description is sufficient if it identifies the estate, *Melvin v. Proprietors*, 5 Met., 15; *Worthington v. Hylyer*, 4 Mass., 205; and a false or mistaken addition will not frustrate the grant, *Ives v. Kimball*, 1 Mich., 313, and that which is repugnant will be rejected, *Anderson v. Baughman*, 7 Mich., 69; 3 Washb. Real Est., 628–9, 37–8. A particular description governs rather than a general one, *Roe v. Vernon*, 5 East, 51.

MARSTON, J. Defendant in error brought an action of ejectment to recover possession of forty acres of land in the township of Ogden, Lenawee county.

To maintain the action in the court below the plaintiff offered in evidence a certified copy, from the register's office of Monroe county of the record of a deed from Robert Van Rensselaer to Joseph R. Stuyvesant, dated October 4, 1840, and acknowledged November 2d, 1840, at the city of Newark, Essex county, New Jersey, before Joseph C. Hornblower, Chief Justice of the Supreme Court of Judicature of the State of New Jersey. The clerk's certificate annexed was made November 9th, 1840, at Newark, in said county, by John P. Jackson, clerk of the county of Essex and of the Superior Court of Common Pleas of said county, who certified to Judge Hornblower's official character and signature, and "that the deed is executed according to the laws of New Jersey."

This deed purports to convey the lands in question, with others in Lenawee county, and the plaintiff claimed that it also conveyed certain lands in Monroe county;

that it was properly recorded therefore in that county, and the record thereof or a certified copy of the same from the records of Monroe county was admissible in this case to prove title to lands in Lenawee county. Defendant below denied that any part of the lands in this deed described were situate in Monroe county, and therefore it was not entitled to record in that county, and that even should a portion of the lands therein described be situate in Monroe county, the record of the deed in that county was not admissible as evidence of the conveyance of that portion of the lands lying in Lenawee county. Other objections were made which will be noticed hereafter. The deed purported to convey "all those certain parcels and portions of land situate and being in the county of Lenawee and in the territory of Michigan, containing in the aggregate two thousand six hundred and eleven acres." Then follows a particular description of the lands according to sections, townships and range. Among the lands thus described, the last was "the west half and west half of northeast quarter of section thirty-three, township seven south, range seven east, containing four hundred acres." At the date of the deed there was no territory of Michigan, nor was there any township seven south, of range seven east in Lenawee county, while there was a township of that number and range in Monroe county.

We cannot agree with counsel for plaintiff in error in holding this description void for uncertainty. It is true that one or other of the descriptions is incorrect. If the township and range is to govern, the lands are not in Lenawee county. And if only lands in Lenawee county were conveyed, then nothing passed by this last description, and the deed to this extent must be held of no effect. If, however, we reject the more general description, the county, if it can be called one, we still give effect to the entire instrument and hold it valid and effectual as to all the lands particularly described therein.

We have no doubt but that in accordance with well

settled rules, the more general description in this case must be rejected, as without this a perfect description of these and all the lands described in the deed remains. *Ives v. Kimball*, 1 Mich., 313; *Boardman v. Lessees*, 6 Pet., 345; *Anderson v. Baughman*, 7 Mich., 69; *Slater v. Rogers*, 36 Mich., 77.

The deed therefore was properly recorded in Monroe county. Was a certified copy of the record from that county admissible in evidence in this case? The statute under which this question arises reads as follows:

"All conveyances and other instruments authorized by law to be recorded, and which shall be acknowledged or proved as provided in this chapter, and if the same shall have been recorded, the record, or a transcript of the record, certified by the register in whose office the same may have been recorded, may be read in evidence in any court within this State without further proof thereof; but the effect of such evidence may be rebutted by other competent testimony." 2 Comp. L., § 4233.

The question raised does not involve the effect to be given the record in Monroe county as notice of the lands described therein, but lying in Lenawee county; that would be a very different question and might lead to a different conclusion. Neither does this question in any way affect the validity of the deed itself as a conveyance of the land therein described. The deed is effectual whether recorded or not. If recording it in the county where the lands are situate was essential to pass the title to the lands therein described as between the parties, the case would be very different from what it now is.

The statute declares that all conveyances when properly executed and recorded, the record, or a transcript thereof, properly certified to, "may be read in evidence in any court within this State" without further proof thereof. There would seem to be no ambiguity in the language here used. And yet we are asked to incorporate, by construction, a clause into this section which would entirely change it and make it read, "may be read in evidence in any court of the county where the lands

lie within this State." This could only be done by construing this section in connection with § 4225, and incorporating a part of the provisions of the latter into those of the former. It is not at all clear, however, that by so doing we would thereby carry out the evident intent of the Legislature. Had it been the intention to limit § 4233 in this manner, we cannot but think that it would not have been left to judicial construction to effect such object when the Legislature could in a much easier and clearer manner have accomplished it at the time. Besides, when we interline the words "of the county where the lands lie," the words following, "within this State," are thereby rendered of no force, but without such interpolation they have a decided bearing, as showing an intention not to limit the admissibility of the record to the county in which the instrument has been recorded, but to extend it to any court in any portion of the State.

Let us see how any other construction would operate in practice. We have a statute which authorizes the prosecution of suits for trespass upon lands, when the defendant is not an actual resident of the county in which such lands are situate, in any county where such defendant may be. § 5976. Should it become necessary in such case for the plaintiff to introduce record evidence of his title to the lands upon which the trespass had been committed, where the suit was prosecuted in some other county, he must necessarily fail if the position contended for by plaintiff in error is correct. Our statute (§ 5146) authorizes bills for the foreclosure or satisfaction of mortgages to be filed in the circuit court in chancery of the county where the mortgaged premises or any part thereof are situated. Must the complainant in such case, where a question of record notice to subsequent purchasers or incumbrancers is not involved, introduce a certified copy of the record of his mortgage from the records of each county in which the mortgaged premises are situate in case he is so unfortunate as to be unable to produce the original instrument, and if in such

38 MICH.—25.

a case he has omitted to record his mortgage in each county in which the lands lie, must he thereby lose his lien to that extent or be compelled to give secondary evidence of his mortgage as of a lost instrument? Or if a party having lands in several counties, claiming title thereto under the same conveyance, brings an action of trover to recover damages, or an action of replevin to recover possession of timber cut and carried away therefrom, in the absence of the original must a certified copy from the record in each county, from whence the timber was taken, be produced on the trial, or would the record from one county suffice? Very many other cases might be supposed similar to the above, but we do not consider it necessary to extend farther in this direction. In each and all these cases we think the record or a certified copy thereof from any county where the conveyance had been properly recorded, would be admissible, not only as to the lands situate in such county, but as to all others embraced in such conveyance, and situate within this State.

Under a similar statute in Pennsylvania it was held in *Leazure v. Hillegas*, 7 S. & R., 313, under circumstances like the present case, that "the deed was legally recorded in Huntington county because it contained a conveyance of land in that county, and being legally recorded, its whole contents became evidence in every part of the State." This case was followed in *Wheeler v. Winn*, 53 Penn. St., 122. In *M'Keen v. Delancy*, 5 Cranch, 22, where the facts were very much like those in the present case, and where the statute provided "that the copies of all deeds, so enrolled, shall be allowed in all courts where produced, and are hereby declared and enacted to be as good evidence, and as valid and effectual in law as the original deeds themselves," the court said: "The whole deed, then, is evidence by the letter of the act. The whole is a copy from the record. If the validity of the conveyance depended on its being recorded in the county where the land lies,

then a deed might be good as to one tract and bad as to another. But the deed is valid though not recorded; and the question is, whether the copy is evidence as to everything it contains. The execution of the deed is one entire thing, and is proved so as to admit the instrument to record. The copy, if true in part, is true in the whole, and if evidence in part, must under the act, and on the general principle that it is the copy of a record, be evidence in the whole."

The language of this section (§ 4233) is in my opinion plain and unambiguous, and I think we are not at liberty, therefore, to limit or change in any way that which the words used fairly denote. *Leoni v. Taylor*, 20 Mich., 155.

A farther objection was made, that the record did not appear to be signed by the register. It was conceded that the statute did not in express terms require the register to sign the record, but such it was said was the universal custom, and that his signature was necessary to authenticate the record. While it may be highly proper and customary for the register to sign the record, yet we cannot say that the record of an instrument found upon the public records in his office is not admissible in evidence, because the register's official signature does not appear to have been attached thereto. A failure upon his part to perform the customary duty in this respect cannot render such record a nullity. If he has performed in all other respects his duties in recording the instrument, as pointed out by the statutes, it is sufficient. An instrument properly executed, acknowledged, and authorized to be recorded, appearing upon the records in his office, must be presumed properly recorded and admissible as such, even although not signed by the register.

The counsel for plaintiff below offered in evidence a printed volume, the title page of which read as follows:

"Revised statutes of the State of New Jersey: passed in 1874. Trenton. Printed by order of the Governor. 1874." On the following page there was a note added stating that through accident several acts revised and presented to the Legislature had failed to pass. Hence no legal publication of any had been made, but as the acts approved go into effect January 1st, 1875, they are herein published for the benefit of the bar and public. Objection was made to the introduction of this volume because it did not purport to be published under the authority of the government of that State, as required by our statute (2 Comp. L., § 5935).

This objection we think is not well taken. This was a printed copy and purported to be printed by order of the Governor of that State. It was therefore published by the authority of one of the coördinate departments of the government, and this we think is sufficient. The intent of our statute is to prevent mere private or unauthorized publications of the statutes of another State from being admitted in evidence; but the distinct authority for printing and publishing the laws need not appear in any case where they purport to be published under the authority of the government. When published under the authority and sanction of the governor of a State, we must accept them and cannot treat them as a mere private or unauthorized publication. This was the only objection made to the introduction of this volume and of the laws therein contained on the trial, and is the only one in reference to said laws we shall notice.

The plaintiff on the trial also offered in evidence certain papers purporting to be a duly authenticated copy of the will of Frederick W. Walker of Morristown, New Jersey, and of the probate thereof in that State and also in Michigan, to the introduction of which a number of objections were made. It was claimed, *first*, that there was no copy of the probate of the will in New Jersey. The question as to what was necessary to give the pro-

bate court jurisdiction came up under this same will in *Pope v. Cutler*, 34 Mich., 152, and it was there held a copy of the foreign will and the probate thereof duly authenticated must be presented to the probate court in this State to give it jurisdiction. In that case there was no evidence that the paper allowed in Lenawee county was accompanied by any foreign probate or authentication to entitle it to credit in this State. In this case there appears by the certificate of the surrogate of Morris county, New Jersey, a copy of the last will and testament of Frederick W. Walker, and the proofs thereof, and the letters granted and issued thereon, as transcribed from the original record thereof in his office. The objection is that none of these nor all together constitute the probate of the will; that there should be another distinct separate judicial act or decree, as the judgment of the court establishing the will.

Technical or unsubstantial objections should not be permitted to defeat such instruments, and unless we can find in the statutes of the State of New Jersey a clear and express provision requiring such judgment or decree in addition to what appears in this case, then it would be our duty to consider the evidence of the probate of the will in that State as sufficient. If the statutes of that State do not in express terms or by clear necessary implication require such separate order or decree, we should be careful not to extend their provisions by a construction which would be of no force in that State, and would conclusively exclude any will admitted there from probate here, and the practice adopted in that State should have great force here in a case involving the proper course of proceedings under their statutes.

The statutes of New Jersey require the surrogate of each county to record in books provided for that purpose all wills proved before him or the orphans' court, together with the proofs thereof, all letters testamentary and of administration by him issued or granted, and all things concerning the same, and transcripts of such records are

admissible in evidence in every court in the State, and when certified under the hand and seal of the surrogate have the same validity and effect as transcripts certified by the register of the prerogative court. The statute also prescribes the form of letters testamentary and of administration; then follows immediately thereafter this provision: "And the said probate of wills and letters of administration shall have the same validity and effect as probate of wills and letters of administration issued by the register of the prerogative office, in the name of the ordinary, with the seal of office affixed." The statutes of New Jersey do not in express terms require any distinct order, judgment or decree establishing the will, and they seem to treat and consider the recording of the will, with the proof thereof and the letters issued thereon, as the probate of the same. All these provisions and requirements have been fully observed and complied with in this case. We are of opinion, therefore, that this will was duly proved and allowed according to the laws of the State of New Jersey.

It is next objected that the papers presented to the probate court of Lenawee county were not duly authenticated. These papers were certified to by the surrogate of Morris county with the seal of his court annexed as being a correct transcript from the record in his office. There was also a certificate by the president judge of the orphans' court of said county, under the seal of said orphans' court, "that the foregoing exemplification of the last will and testament of Frederick W. Walker, deceased, is authenticated in due form and by the proper officer." The specific objections are, that this record does not purport to be a record of the orphans' court, or that there was any proceeding in that court, while the certificate that the authentication is in due form is by the president judge of that court, and that it does not appear to be attested by the clerk of the orphans' court, but by the surrogate.

The statute of New Jersey provides that the judges of

the court of common pleas, in the several counties of the State, are constituted judges of a court of record to be called the "orphans' court." § 1. By the 4th section of the act, the surrogate of the county is made the clerk or register of this court. The 5th section gives this court full jurisdiction in all matters pertaining to wills. By the 16th section the surrogate takes proofs of wills granting administration, etc. The 17th section makes it his duty to record such wills and proofs, letters of administration, and all things concerning the same. And the 18th section authorizes him to issue letters of administration. Revised Statutes of New Jersey, 1847, p. 205 et seq.

Section 2 of an act relating to official seals provides that "the seals of the surrogates of the respective counties shall be also the seals of the orphans' courts of said counties respectively." Id. p. 865. This brief abstract of the statutes of New Jersey shows clearly that these papers were authenticated "by the attestation of the clerk, and the seal of the court annexed, * * together with a certificate of the * * presiding magistrate * * that the said attestation is in due form" as required by the act of Congress. 2 Comp. L., p. 2251.

As we discover no error in the record, the judgment must be affirmed with costs.

The other Justices concurred.

GRAVES, J.    When a deed covers lands in different counties and is recorded in one only, does such recording inure to constitute a record of the parcels situate beyond that county in such sense that a transcript certified by the register of the office containing the record will be evidence in regard to such foreign parcels within the provisions of Comp. L., § 4233? I agree with my brother Marston that it does.

The register is as much bound to enter the parcels situated in other counties as those in his own. The

deeds are positively required to be entered at *full length* wherever recorded (§§ 4228, 4254); and no discretion is given to the register to pick out and omit parcels he may suppose to be in other counties. He has no power to judge, and may not break in upon the identity of the instrument by suppressing part of its contents. It forms a record in its entirety by authority of law in his office, and the other provision for certifying transcripts is *in pari materia* and contemplates that the whole of such authorized record may be evidence if regularly certified by the register in whose office the record belongs.

The will referred to was certified hither by the New Jersey authorities as one which had been duly proved and allowed there according to her laws, and it not being shown that any separate and specific act of adjudication was necessary there, that the will was well proved, we cannot presume in order to contradict the authentication made by her officers and impeach the jurisdiction of the court of probate in Lenawee county, which allowed the will in this State, that her laws did actually require such separate and specific adjudication.

In the absence of anything to even raise a contrary inference or suggest a probability of such a requirement, it is not unreasonable to give full faith and credit to the evidence afforded by the official testimonials in the authentication.

I concur in holding that the judgment should be affirmed.